

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

March 16, 1961

Mr. R. L. Templeton
County Attorney
Collingsworth County
Wellington, Texas

Opinion No. WW-1009

Re: Legality of an election levy-
ing a 30 cent ad valorem tax,
when the notice provided for
the tax to be levied for the
years, 1957, 1958, 1959 and
1960, while the proposition
voted on was not restricted as
to certain years, and related
questions.

Dear Mr. Templeton:

Thank you for your recent letter concerning an election
held in Collingsworth County on April 2, 1957, as provided
for in Section 7 of Article 7048a of Vernon's Civil Statutes.
You advise that the Commissioners Court called the election
so that the qualified voters could pass on the proposition
as follows:

### "PROPOSITION

"To determine whether or not said County shall
be authorized to levy, assess, and collect ad
valorem taxes upon all taxable property with-
in said County for the years of 1957, 1958,
1959 and 1960, except the first $3,000.00 valua-
tion of residential homesteads, not to exceed 30
cents on each $100.00 valuation in addition to
all other ad valorem taxes authorized by the Con-
stitution of the State of Texas, provided the
revenue therefrom shall be used for the construc-
tion and maintenance of farm-to-market and lateral
roads as provided in House Bill No. 107, Acts 51st
Legislature, Regular Session, 1949."

Your letter reflects that the wording appearing on the
ballots which were used in the election was as follows:

"FOR THE TAX OF NOT EXCEEDING 30 CENTS ON EACH
ONE HUNDRED DOLLARS (100.00) VALUATION"

"AGAINST THE TAX OF NOT EXCEEDING 30 CENTS ON
EACH ONE HUNDRED DOLLARS ($100.00) VALUATION"

Your letter further reflects that the tax carried by a vote of 655 votes to 338 votes. In connection with the election, you asked the following questions, which we have taken the liberty of rephrasing:

1.  May the duration of the ad valorem tax in question be limited to a specific number of years?

2.  Did the fact that the ballots failed to show that the tax was only for the years 1957, 1958, 1959 and 1960, invalidate the election?

3.  Can the tax in question be collected for 1961 without another election?

Section 7 of Article 7048a of Vernon's Civil Statutes reads as follows:

"Before any county shall levy, assess and collect the tax provided for herein the question shall by the Commissioners Court of the county be submitted to a vote of the qualified property taxpaying voters of such county at an election called for that purpose, either on said Commissioners Court's own motion, or upon petition of ten per cent (10%) of the qualified property taxpaying voters of said county as shown by the returns of the last general election. Said election shall be ordered at a regular session of said Commissioners Court and such order shall specify the rate of tax to be voted on, not to exceed thirty cents (30¢) on each One Hundred Dollars ($100) valuation of taxable property within such county, shall state the date when said election shall be held, and shall appoint officers to hold said election in accordance with the election laws of this State. Provided, however, that the proposition submitted to the qualified property taxpaying voters at said election may provide that the tax at a rate not to exceed thirty cents (30¢) on each One Hundred Dollars ($100) valuation may be

used for the construction and maintenance of Farm-to-Market and Lateral Roads or for Flood Control purposes, either or both, as the Commissioners Court may determine (in which event the ballots shall have written or printed thereon, 'For the tax of not exceeding _____ cents on each One Hundred Dollars ($100) valuation,' and the contrary thereof, specifying the tax to be voted upon), or the proposition may provide for a specific maximum tax for Farm-to-Market and Lateral Roads purposes and a specific maximum tax for Flood Control purposes, the total of the two (2) specific maximum taxes not to exceed thirty cents (30¢) on the One Hundred Dollars ($100) valuation (in which event the ballots shall have written or printed thereon, 'For a Farm-to-Market and Lateral Roads tax of not exceeding _____ cents and a Flood Control tax of not exceeding _____ cents, on the One Hundred Dollars ($100) valuation,' and the contrary thereof, specifying the specific taxes to be voted upon). Provided, further, that elections may subsequently be called and held in the same manner for the purpose of changing the amount of the maximum tax within the limit of thirty cents (30¢) on the One Hundred Dollars ($100) valuation, or for changing the amounts of the maximum specific tax voted for each purpose; provided, however, that such tax or taxes may not be reduced to an extent which would result in the impairment of any bonds or warrants theretofore issued under the provisions of Section 10 of this Act."  (Emphasis added)

In connection with question number 1, by limiting the duration of the ad valorem tax in question the Commissioners Court of Collingsworth County used the power granted to it by Section 7 of Article 7048a in a limited way.  We find nothing in the statute in question or in the Texas Constitution which makes this self-imposed restriction illegal.  The effect of the four year limitation is the same as if the electorate had voted at the end of four years to repeal the tax.  Section 7 reserves to the electorate the right to reduce or repeal the tax in question, if such reduction or repeal does not impair any obligation in the form of bonds or warrants, as provided

for in Section 10, Article 7048a, or in the form of claims arising out of the extension of the County's general credit by the Commissioners Court for the purpose of constructing and maintaining the farm-to-market and lateral roads in question, San Antonio River Authority v. Shepperd, 157 Tex. 73, 299 S.W.2d 920 (1957).

The underlined portion of Section 7 has a direct bearing on this situation. Here the proposition did provide that the tax at a rate not to exceed thirty cents (30¢) on each One Hundred Dollars ($100) was to be used for the construction and maintenance of farm-to-market roads, and therefore the provision contained in the first parentheses in Section 7 was applicable. Such wording did appear on the ballots used in the election. In view of the language ". . . in which event the ballots shall have written thereon . . .", a strong argument could be made that the language in question is mandatory and that the ballots had to read as they in fact did read in order for the election to be valid, Jones v. Threet, 117 S.W.2d 560 (Civ. App. 1938). Even assuming that it was not essential to the validity of the election that the ballots contain the wording set out in the statute, it is clear that it is not essential to the validity of an election that the ballots contain the exact wording of the proposition passed upon by the Commissioners Court. In the opinion in Reynolds Land & Cattle Co. v. McCabe, 72 Tex. 57, 12 S.W. 165 (1888), it is said:

> ". . . When a statute which authorizes a special election for the imposition of a tax prescribes the form in which the question shall be submitted to the popular vote, we are of opinion that the statute should be strictly complied with; but if the form is not prescribed, then we are of opinion that the language of the proposition submitted is not material, provided it substantially submits the question which the law authorizes with such definiteness and certainty that the voters are not misled. . . ."

In England v. McCoy, 269 S.W.2d 813 (Civ. App. 1954, error dism.), a ballot submitting the question "Do you favor the proposed charter?" was held to be sufficient to fairly inform the voters of the question submitted. In the England case, supra, the Court placed emphasis on the fact that the contents of the

proposed charter had been publicized in the notice of the election. In the instant case, it seems obvious that no voter who previously read the Commissioners Court's order or the notice of the election, which was posted and published in compliance with Section 8 of Article 7048a of Vernon's Civil Statutes, could have been misled by the wording of the ballot. In our opinion, the wording used on the ballots in question did not invalidate the election.

In Section 7 it is stated that before any county shall levy, assess and collect this ad valorem tax, the question shall be submitted to the qualified property taxpaying voters of such county at an election called for that purpose, either on the Commissioners Court's own motion, or upon petition of ten per cent (10%) of the qualified property taxpaying voters of such county. In the instant case, the Commissioners Court's order calling the election was the authority upon which the election was based. Therefore, since such order concerned an ad valorem tax limited to four years duration, the electorate could vote only upon such limited tax. The fact that the ballots did not reflect such limitation did not have the effect of eliminating the limitation. Your first question is answered in the affirmative and questions 2 and 3 are answered in the negative.

## S U M M A R Y

It was legal for the Commissioners Court of Collingsworth County to limit the duration of the tax in question to the years of 1957-1960, inclusive, and the fact that the ballots used in the election failed to show the limited duration of the tax did not invalidate the election. Such tax should not be collected for 1961 without another election as provided for in Section 7 of Article 7048a of Vernon's Civil Statutes.

Yours very truly,

WILL WILSON
Attorney General of Texas

By

Joe B. McMaster
Assistant

JBM:mm

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

W. Ray Scruggs
J. Arthur Sandlin
Iola B. Wilcox

REVIEWED FOR THE ATTORNEY GENERAL

BY:  Morgan Nesbitt