**FILED**

January 28, 2025

**Fifteenth Court of Appeals**
**Christopher A. Prine**
**Clerk of Court**

ACCEPTED
15-24-00074-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
1/28/2025 9:25 PM
CHRISTOPHER A. PRINE
CLERK

RECEIVED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
1/28/2025 9:26:24 PM
CHRISTOPHER A. PRINE
Clerk

No. 15-24-00074-CV

# In the Court of Appeals for the Fifteenth Judicial District Austin, Texas

Jane Nelson, in her official capacity as Secretary of State for the State of Texas,

*Appellants,*

*v.*

Jarrett Woodward, Heather Couchman, Amber Cloy, Tommie Dickinson, Travis Eubanks, Amanda Eubanks, Traci Jones, Lars Kuslich, Michelle Pique, Madelon Highsmith, and Sharon Cotton, Voters of Bexar County,

*Appellees,*

On Appeal from the
261st Judicial District Court, Travis County

## APPELLEE KUSLICH'S SECOND AMENDED BRIEF

LARS KUSLICH

*Pro Se Appellee*

# Table of Contents

Table of Authorities.................................................................3

Record References..................................................................7

Statement of the Case..............................................................7

Statement Regarding Oral Argument...........................................9

Issues Presented....................................................................9

Statement of the Facts...........................................................10

Summary of the Argument......................................................15

Standard of Review...............................................................17

Argument............................................................................17

I. Appellants Made an Illegal Proclamation to Justify Mootness. 18

II. Election Contests on Measures are Afforded an Exception to the Standing Doctrine..............................................................22

III. The Secretary of State Was Properly Served.......................35

a. The Citation Requirements of Texas Election Code §§ 233.007, 233.008 Are Not Jurisdictional................................................35

b. Appellants' Claims Regarding Defective Process Were Waived ........................................................................................42

c. The Diligence in Serving the Secretary of State Defeats the Deadline to Serve.................................................................43

IV. Appellees Have Sufficiently Pled Election Contests and Any Defects Are Curable..............................................................48

Prayer................................................................................56

Certificate of Compliance.......................................................58

Certificate of Service.............................................................59

Appendix.............................................................................60

Exhibit A............................................................................61

Exhibit B............................................................................68

Exhibit C............................................................................75

# Table of Authorities

**Cases**

Andrade v. NAACP of Austin, 345 S.W.3d 1 (Tex. 2011)...................35

Bland ISD v. Blue, 34 S.W.3d 547 (Tex. 2000).......................................51

Blue Crs. Blue Shld. of Texas v. Duenez, 201 S.W.3d 674 (Tex. 2006).................................................................................................................31

Blum v. Lanier, 997 S.W.2d 259 (Tex. 1999).......................................52

Chumney v. Craig, 805 S.W.2d 864 (Tex. App. 1991)...................49,50

City of Houston v. Bryant, 516 S.W.3d 47 (Tex. App. 2017)

...............................................................................................20,38,39,41,48

Dacus v. Parker, 383 S.W.3d 557 (Tex. App. 2012).......................27,29

Dacus v. Parker, 466 S.W.3d 820 (Tex. 2015)................................28,30

Fin. Comm'n of Tex. v. Norwood, 418 S.W.3d 566 (Tex. 2013)

...............................................................................................................24,25,29

Garcia v. Ennis, 554 S.W.3d 209 (Tex. App. 2018)...............................36

Gonzalez v. Villarreal, 251 S.W.3d 763 (Tex. App. 2008).................55

Goodman v. Wise, 620 S.W.2d 857 (Tex. App. 1981).........................50

Green v. Reyes, 836 S.W.2d 203 (Tex. App. 1992).............................50

Heckman v. Williamson Cnty., 369 S.W.3d 137 (Tex. 2012)............17

In Re Marriage of M.C., 65 S.W.3d 188 (Tex. App. 2001)..................51

In re Morris, No. 23-0111 (Tex. Mar. 17, 2023)..........................31,32,33

Jones v. Turner, 646 S.W.3d 319 (Tex. 2022).........................................24

LEJ Development Corporation and L.E. Jowell, Jr. v. Southwest
    Bank, 407 S.W.3d 863 (Tex. App. 2013).................................................42

Mansell v. Ins. Co. of the W, 203 S.W.3d 499 (Tex. App. 2006) 36,37

McCoy v. McCoy, No. 02-17-00275-CV (Tex. App. Nov. 15, 2018) 42

Medeles v. Nunez, 923 S.W.2d 659 (Tex. App. 1996).......................36

Meyers v. JDC/Firethorne, Ltd., 548 S.W.3d 477 (Tex. 2018)..........29

Moore Ex Rel. Moore v. Elektro-Mobil Technik GmbH, 874 S.W.2d
    324 (Tex. App. 1994).......................................................................43

Morris v. Morris, 759 S.W.2d 707 (Tex. App. 1988)............................20

Perez v. Turner, 629 S.W.3d 270 (Tex. App. 2019)............................26

Pike v. Tex. EMC Mgmt., 610 S.W.3d 763 (Tex. 2020).............22,23,31

PNS Stores, Inc. v. Rivera ex rel. Rivera, 379 S.W.3d 267 (Tex.
    2012)..........................................................................................................21,37

Proulx v. Wells, 235 S.W.3d 213, 215 (Tex. 2007).......................45,47

Stephens, Zena Collins, PD-1032-20 (Tex. Crim. App. 2021)..........21

Summersett v. Jaiyeola, 438 S.W.3d 84 (Tex. App. 2013)................43

TAC Americas, Inc. v. Boothe, 94 S.W.3d 315 (Tex. App. 2002)....36

Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440 (Tex. 1993)............................................................................................30

Texas Dept. Parks Wildlife v. Miranda, 133 S.W.3d 217 (Tex. 2004) ............................................................................................51

Tex. Med. Res. v. Molina Healthcare of Tex., 59 S.W.3d 424 (Tex. 2023)............................................................................................24

Tex. St. Univ. v. Tanner, No. 22-0291 (Tex. May 3, 2024)......44,45,48

Wilson v. Dunn, 800 S.W.2d 833 (Tex. 1991)......................................20

**Statutes**

Tex. Elec. Code § 123.061............................................................................53

Tex. Elec. Code § 123.062............................................................................53

Tex. Elec. Code § 221.003........................................................................35,49

Tex. Elec. Code § 221.004............................................................................37

Tex. Elec. Code § 221.006............................................................................19

Tex. Elec. Code § 221.009............................................................................54

Tex. Elec. Code § 233.007........................................................................13,40

Tex. Elec. Code § 233.008............................................................................13

Tex. Elec. Code § 233.014.................................................................18,19,44,50

**Constitutional Provisions**

TEX. CONST. art. II § 1................................................................22

TEX. CONST. art. V § 1................................................................21

**Rules**

Tex. R. Civ. P. 99................................................................13,47

Tex. R. Civ. P. 118................................................................20,41

Tex. R. Civ. P. 120................................................................43

**Other Authorities**

Voting Systems by County................................................................53,54

# Record References

The terminology described in the Record References section included in the Appellants' Brief will also be used in this brief.

# Statement of the Case

*Nature of the Case:* The November 2023 election included fourteen proposed constitutional amendments, including Propositions 2, 5, 7, 8, 9, and 10. CR.96–99. Shortly after the election, Appellees Amber Cloy and Tommie Dickinson (collectively, "Dickinson"), Madelon Highsmith, Traci Jones, and Sharon Cotton (collectively, "Highsmith"), Lars Kuslich ("Kuslich"), and Michelle Pique, Shannon Huggins, and Sharon Jorolan (collectively, "Pique") (hereinafter referred together as "Appellees") filed suits, which were later amended, that are both election contests and challenges to the constitutionality of certain statutes. All contests claim that the electronic voting systems used in the November 2023 election were not legally certified, which would mean that all votes cast by over 2.5 million voters in Texas were illegal. Dickinson Suppl. CR.5–21 (Dickinson's Orig. Pet.); Highsmith Suppl. CR.4–21 (Highsmith's Orig. Pet.); CR.778-809 (Kuslich's Amended Pet.); Pique Suppl. CR.6–27 (Pique's Orig. Pet.). These contests were acknowledged by Governor Abbott on November 27, 2023 and used as the reason why an official result for each proposition would not be made. CR.95. Despite this, Governor Abbott certified the election canvass and proclaimed the

7

propositions to be part of the Texas Constitution on December 4, 2023. CR.355-59, 614-15.

| | |
|---|---|
| *Course of*<br><br>*Proceedings:* | Appellant Jane Nelson, the Texas Secretary of State ("Appellant" or the "Secretary"), filed amended Pleas to the Jurisdiction on December 15, 2023, asserting that Appellees' suits had been rendered moot, that they lacked standing, and that they failed to plead a viable election contest. CR.82–616 (Kuslich plea); Dickinson Suppl. CR.163–697 (Dickinson plea); Highsmith Suppl. CR.166–700 (Highsmith plea); Pique Suppl. CR.224–760 (Pique plea). The trial court held hearings on Appellants' pleas on February 16, 2024 (Highsmith), February 22, 2024 (Pique), and March 28, 2024 (Kuslich). Highsmith RR.1–44; Pique RR.1–55; Kuslich RR.1–29. Pique Suppl. CR.161–64. Appellants' Plea to the Jurisdiction concerning Dickinson's claims was heard by submission. Additionally, the trial court fully consolidated Appellees' suits on April 30, 2024, which is why this appeal arrives in this odd form. CR.839–41. |
| *Trial Court:* | 261st Judicial District Court, Travis County<br>The Honorable Jessica Mangrum |
| *Trial Court*<br><br>*Disposition:* | The trial court denied Appellants' plea as to Kuslich's claims on April 29, 2024 (CR.833), and denied Appellants' pleas as to Dickinson, Highsmith, and Pique's claims on April 30, 2024. Supp. CR.4–6. The Secretary filed a notice of appeal on May 15, 2024. |

# Statement Regarding Oral Argument

Setting aside Appellants' conclusory statement, I also believe that oral argument will not aid the Court due to the straightforward issues here.  Additionally, I respectfully reserve the right to participate in oral argument should the Court decide it is necessary.

# Issues Presented

1.  Was the Governor's proclamation that the Propositions are now part of the Texas Constitution performed illegally?

2.  Are qualified voters granted an exception to the general standing doctrine for election contests on measures so that they do not need to assert a particularized injury?

3.  Was the Secretary of State properly served with process?

a.  Are the citation requirements given by Texas Election Code §§ 233.007, 233.008 jurisdictional?

b.  Were Appellants' claims regarding a defective citation waived by a general appearance?

c.  Did diligence in trying to serve the Secretary of State allow the corrected citation to be timely served?

4. Was the election contest insufficiently pled and, if so, is the proper judicial response to dismiss the contest due to lack of jurisdiction?

**S t a t e m e n t   o f   t h e   F a c t s**

**I. The November 2023 Election and the Election Contests**

On November 7, 2023, Texas held an election on fourteen proposed amendments to the Texas Constitution. The Secretary of State claims that all but one of the amendments were approved by the voters. *See* CR.96-99.

Pique filed a suit on November 14, 2023 that was an election contest under Chapter 233 of the Texas Election Code and a challenge to the constitutionality of state statutes. *See* Pique Suppl. CR.6–158 (Pique's Orig. Pet.). Dickinson, Kuslich, and Highsmith each filed their own suits that were election contests and constitutionality challenges on November 17, November 17, and November 20, respectively. *See* Dickinson Suppl. CR.5–49 (Dickinson's Orig. Pet.); *See* CR.5–53 (Kuslich's Orig. Pet.); *See* Highsmith Suppl. CR.4–67 (Highsmith's Orig. Pet.).

Initially, the various suits were very similar to each other, but this changed significantly in regards to the Kuslich suit after

an amended petition was filed on March 25, 2024. *See* CR.778-809. For the initial petitions, the election contest portions all claimed that the voting systems used in the November 2023 election did not meet the Election Code's requirements for federal certification, which would render all votes cast during that election illegal regardless of the voters themselves. *See* generally CR.5–25; Dickinson Suppl. CR.5–21; Highsmith Suppl. CR.4–21; Pique Suppl. CR.6–27. The election contests also included an argument that the electronic pollbooks were part of the voting systems due to their integrated nature with the other voting machines and the voting process itself. *See* CR.19-20; Dickinson Suppl. CR.16; Highsmith Suppl. CR.15-16; Pique Suppl. CR.18-19. This argument was expanded with the claim that the electronic pollbooks were connected to the Internet, which if they are a part of the voting system would violate Texas Election Code § 129.054(a). *See* CR.19-20; Dickinson Suppl. CR.16; Highsmith Suppl. CR.15-16; Pique Suppl. CR.18-19. Taken together, the four suits challenge the November 2023 election regarding Propositions 2, 5, 7, 8, 9, and 10. The constitutionality challenge portions of the petitions claimed that all of Title 8 of the Election

Code is unconstitutional because Article VI, Section 4 of the Texas Constitution requires preservation of the purity of the ballot box that electronic voting systems cannot satisfy. *See* CR.21–23; Dickinson Suppl. CR.17–19; Highsmith Suppl. CR.17–19; Pique Suppl. CR.22–25.

On March 25, 2024, an amended petition was filed in the Kuslich case. *See* CR.778-809. This amended petition removed the arguments related to electronic pollbooks as well as the constitutional challenge to Title 8 of the Election Code. *See* generally Id. It also added a constitutional challenge to sections 233.014(d), (e), and (h) of the Election Code. *See* CR.790-794. The argument for their unconstitutionality is that they infringe on an inherent aspect of the judicial power reserved to the courts. *See* Id. Despite these changes, Judge Mangrum ordered that all of the suits be completely consolidated on April 30, 2024. *See* CR.839-41. It is presently unclear which arguments and challenges are retained in the consolidated suit. However, the issues presented in this appeal are not dependent on the presence or absence of those changes in particular, so it is not necessary to answer that question now.

## II. Service of Process to Secretary of State

When requesting the initial citations, the Appellees for the Kuslich, Highsmith, and Pique suits asked the District Clerk of Travis County to refer to sections 233.007(a)(2) and 233.008 of the Texas Election Code for relevant instructions. *See* CR.54-55; Highsmith Suppl. CR.68–69; Pique Suppl. CR.159-160. Those two statutes state, respectively, that "[a] contestee must file an answer to the contestant's petition not later than:...10 a.m. of the 20th day after the date of service of citation, if the contested election is statewide" and "[t]he citation issued in an election contest must direct the officer receiving the citation to return it unserved if it is not served within 20 days after the date of issuance." Tex. Elec. Code §§ 233.007(a)(2), 233.008. The deadline given in 233.007(a)(2) is important because "[t]he citation must command the contestee to answer by the specified deadline." Tex. Elec. Code § 233.007(b). Despite these requests, the citations received by Appellees and served on the Secretary of State on November 21, 2023 did not conform to these statutory requirements. *See* CR.57; Dickinson Suppl. CR.53; Highsmith Suppl. CR.71; Pique Suppl. CR.163. In short, the Secretary was

13

served a defective citation. However, it should be noted the citations do appear to conform with the requirements given in the Texas Rules of Civil Procedure. *See* Tex. R. Civ. P. 99.

Appellees eventually recognized the deficiency in the citations that were served. In an attempt to correct this mistake, Appellees requested an additional citation from the District Clerk's office on December 5, 2023, and in that instance, all of the requests asked the District Clerk to refer to sections in the Texas Election Code for relevant instructions. *See* CR.72-73; Dickinson Suppl. CR.114-15; Highsmith Suppl. CR.87-88; Pique Suppl. CR.179-80. These citations did comply with the relevant Election Code statutes, and they were served to the Secretary on December 6, 2023. *See* CR.75; Dickinson Suppl. CR.117; Highsmith Suppl. CR.92; Pique Suppl. CR.182.

## III. Secretary of State's Plea to the Jurisdiction

The Secretary of State filed her initial Plea to the Jurisdiction on December 5, 2023, and on December 15, 2023, she filed an amended Plea to the Jurisdiction. *See* CR.58-71; CR.82-616. The amendments to the Plea to the Jurisdiction were primarily the addition of exhibits purportedly showing that a statement of final

vote count was signed on November 27, 2023 and the official canvassing, certification of the final vote tabulations, and proclamation of the election results had been completed on December 4, 2023. *See* generally CR.82-616. In both versions of the Plea, the Secretary split the Plea into four claims, but it could easily be argued that the first and third claims are two parts of the same point. The first claim was that service of a defective citation means that no personal jurisdiction was established. The second claim was that a concrete, particularized injury is required for this type of election contest. The third claim was that Appellees claims are moot because the final canvassing and so forth occurred before service could be performed. The fourth claim was that the election contests were simply invalid. *See* CR.82-92. After the trial court held hearings for the Secretary's Pleas in each case, the Pleas were denied without elaboration. *See* Supp. CR.3–6.

## S u m m a r y   o f   t h e   A r g u m e n t

**I.** Appellants unilaterally determined that the original citation was void to justify finishing the canvass and proclaiming the Propositions to be part of the Texas Constitution. In order to do

this, Appellants had to usurp judicial power to make what is essentially a judicial order.

**II.**  The argument that Appellees have not satisfied constitutional standing requirements is irrelevant because election contests on measures are an exception to the typical standing requirements. The Texas Supreme Court has published case law in recent years that indicate this, and previous case law hints at the exception too.  Even with Texas courts following the federal requirements for standing, there are exceptions to that general standing doctrine that have persisted over the years, such as the exception involving taxpayers suing to stop the expenditure of tax dollars.

**III.**  Appellants use case law authorities that do not support the contention that defects in citations are jurisdictional.  A statutory interpretation analysis shows that the statute(s) in question are not jurisdictional.  Appellants waived their argument regarding the citation by making a general appearance.  Alternatively, the diligence shown in attempting to serve the Secretary of State with a correct process defeats the deadline for when process must be served.

16

**IV.** Appellants misrepresent Appellees' claims and cite irrelevant authorities to support their interpretations of law. Appellees did sufficiently plead election contests, and at any rate, the correct response if the pleadings are insufficient is to allow the Appellees or Contestants the opportunity to amend them. Amending the petitions would also be appropriate because any pleading deficiencies are implied by information already present in the petitions.

## Standard of Review

The contents of the Standard of Review section in Appellants' Brief are considered incorporated herein and supplemented by the following. A court is required to construe pleadings in the plaintiff's favor when ruling on a motion or pleading. "We construe the plaintiff's pleadings liberally, taking all factual assertions as true, and look to the plaintiff's intent." *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012).

## Argument

The arguments presented in the Appellant Brief are not different in any meaningful way from those presented in Secretary Nelson's Amended Plea to the Jurisdiction. *See* CR.82-

616. It is for this reason that some of the following arguments are largely the same as in my response to that Plea. *See* CR.656-666; *See also* Kuslich RR.11-23. However, there are differences as a result of new knowledge and considerations of presentation.

## I. Appellants Made an Illegal Proclamation to Justify Mootness

Appellants' first claim hinges on their third claim being correct since declaring an official result of the election would otherwise be illegal. *See* Appellants' Brief ¶¶ 22-24; Tex. Elec. Code § 233.014(c) ("The declaration of the official result of a contested election may not be made until the contest is finally determined..."). My argument as to why Appellants' third claim is incorrect is presented in the corresponding section below, but in order to present a coherent argument here, I will assume that their third claim has already been finally and totally overruled and rejected.

Appellants have accurately described the concept of mootness and how it relates to election contests, but their argument for why Appellees' election contests are moot relies on the fact that Appellants have performed illegal actions. Since the

18

issues with the citation were not jurisdictional or relate back to the dates of filing the petitions, Governor Abbott had no authority to issue the proclamation that was meant to enshrine the Propositions into the Texas Constitution. *See* CR.614-15; Tex. Elec. Code § 233.014(c); *See also* Tex. Elec. Code § 221.006 ("Except as otherwise provided by this title, the filing of an election contest before the canvass of the contested election is completed does not affect the canvassing process, and the result of the election shall be determined and certified as if the contest had not been filed."). Accordingly, the Propositions did not "bec[o]me part of the Texas Constitution" as they allege. Appellants' Brief ¶ 16. This is especially egregious when Governor Abbott admitted in the statement of final vote count that it was done "in accordance with Section 233.014(c), Texas Election Code" because "[c]ontests of the election on State of Texas Propositions 1 through 14 have been filed, and the declaration of the official result for each proposition will not be made until the contests are finally determined." CR.95.

Appellants contend "Appellees had not successfully commenced an election contest that would halt declaration of the

official result."  Appellants' Brief ¶ 16.  This contention is based on the fact that the initial citation that was served on the Secretary of State did not comport with all statutory requirements, and seemingly in Appellants' estimation, a defective citation equates to a void citation, which would be a jurisdictional concern.  *See Id.*; *Morris v. Morris*, 759 S.W.2d 707, 712 (Tex. App. 1988) ("...when service of process is void...[t]he trial court would lack jurisdiction.").   However, this does not comport with either the analysis provided in part III below or the idea of a defective citation.   Defective citations are a concept that has existed for many decades, and the idea that defects in a citation make it void contradicts the idea of curable defects.  *See*, e.g, *City of Houston v. Bryant*, 516 S.W.3d 47, 55 (Tex. App. 2017) ("...[A] curable defect in service of process does not defeat a defendant's amenability to the court's process...");  *See also* Tex. R. Civ. P. 118.   Additionally, "'When actual notice of an action has been given, irregularity in the content of the notice or the manner in which it was given does not render the notice inadequate.'" *Wilson v. Dunn*, 800 S.W.2d 833, 837 (Tex. 1991) (quoting section 3 of the RESTATEMENT (SECOND) OF JUDGMENTS (1982)).

Moreover, even if the citation were void, that does not mean that Appellants had the authority to make that determination and ignore it. Considering void judgments for a bit, "[i]t is well settled that a litigant may attack a void judgment directly or collaterally" with one possible goal of the attack to "vacate a judgment[.]" *PNS Stores, Inc. v. Rivera ex rel. Rivera*, 379 S.W.3d 267, 271 (Tex. 2012). In other words, an order from the court is still necessary to vacate a judgment that is void. By way of comparison, a court order would be needed to declare a citation as void and insufficient to establish personal jurisdiction. Since the Governor and his office, the Secretary of State and her office, and the Attorney General and his office are all part of the Executive Branch, they had no authority to make such a determination. *See Stephens, Zena Collins*, PD-1032-20 at *16 (Tex. Crim. App. 2021) ("[T]he 'other duties' clause [of Tex. Const. art. IV, § 22] may not transform the judicial duty of prosecutorial power into an executive duty."). In fact, making such a determination is equivalent to a judicial order. In order to make such an order, judicial power is required, and such power has been vested only in the various Texas courts. *See* TEX. CONST.

art. V § 1. By making the determination anyway, Appellants have usurped judicial power from the Texas courts in violation of the Separation of Powers section of the Texas Constitution. *See* TEX. CONST. art. II § 1. This is, of course, illegal, and I urge this Court not to allow such a usurpation to stand in Texas's case law.

## II. Election Contests on Measures are Afforded an Exception to the Standing Doctrine

In terms of standing, Appellants rely on the idea that a concrete, particularized injury is constitutionally required for standing. *See* Appellants' Brief ¶ 18. This idea was perhaps most directly laid out in *Pike v. Tex. EMC Mgmt.*, 610 S.W.3d 763 (Tex. 2020). In *Pike v. Tex. EMC Mgmt.*, the Texas Supreme Court drew a distinction between "standing in the true constitutional sense of that term," which is required for a court to have subject-matter jurisdiction, and "statutory or prudential considerations that 'do[ ] not implicate subject-matter jurisdiction' but determine whether a plaintiff 'falls within the class of [persons] ... authorized to sue' or otherwise has 'a valid ... cause of action.' *Lexmark Int'l, Inc. v. Static Control Components, Inc.* , 572 U.S. 118, 128 & n.4, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014)[.]" *Pike v. Tex. EMC Mgmt.*,

22

610 S.W.3d 763, 773-74 (Tex. 2020). They stated they "have been clear in this century that the question whether a plaintiff has established his right 'to go forward with [his] suit' or 'satisfied the requisites of a particular statute' pertains 'in reality to the right of the plaintiff to relief rather than to the [subject-matter] jurisdiction of the court to afford it.' *Dubai Petroleum Co. v. Kazi* , 12 S.W.3d 71, 76–77 (Tex. 2000)." *Pike v. Tex. EMC Mgmt.*, 610 S.W.3d 763, 774 (Tex. 2020). Regarding standing itself, someone "'`lacks standing [when] his claim of injury is too slight for a court to afford redress.`'" *Id*. (citations omitted). Conversely, "'A plaintiff has standing when it is personally aggrieved, regardless of whether it is acting with legal authority[.]'" *Id*. at 775 (citation omitted). In light of this case, Appellants argue that Texas Election Code § 233.002 is merely a statutory or prudential consideration that only determines whether Appellees fall within the class of persons authorized to sue. Accordingly, Appellants conclude that Appellees still need to have suffered a particularized injury in order to have actual constitutional standing. This argument rejects the concept of statutory standing, which has also been rejected by the Texas Supreme

Court.  *See*, e.g., *Tex. Med. Res. v. Molina Healthcare of Tex.*, 59 S.W.3d 424, 441 (Tex. 2023) ("Since *Pike* , we have also corrected arguments characterizing Sections 2001.038(a) and 2001.174(2) of the Administrative Procedure Act as 'statutory standing' provisions.") (citations omitted).

However, the Texas Supreme Court has also acknowledged and ruled upon "special circumstances" where the standing doctrine as just described does not necessarily hold.  *See Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 584 (Tex. 2013) ("...in the context of an exceptional constitutional provision...we conclude that the [plaintiffs] have standing.");  *See also Jones v. Turner*, 646 S.W.3d 319, 323 (Tex. 2022) ("Texas law recognizes a 'long-established exception' for taxpayers, who may sue 'to enjoin the illegal expenditure of public funds' without showing a particularized injury.") (citation omitted).  As they have explained:

Section 50(u) [of the Texas Constitution] creates an exceptional context in which to assess standing. So do voting rights, as we acknowledged in [*Andrade v. NAACP of Austin*, 345 S.W.3d 1 (Tex. 2011)]. In that

case, there was only a possibility that the plaintiffs would vote in the future, and if they did, there was no proof at all that the machines to which they objected would be used, would be improperly programmed, or would malfunction, or that their votes would be inaccurately counted. Though the standing doctrine would insist on a more substantial injury in other contexts, voting rights present a special situation. The same may be said of this case. Section 50(u) is unique to the Texas Constitution. Its preclusion of the injury typically required for standing requires application of the doctrine in context. The alternative, as we have noted, is to allow the doctrine to be used to alter what it is designed to maintain—the proper separation of powers.

*Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 584 (Tex. 2013). Considering these exceptions as well as the Texas Supreme Court's assertion that they have been holding to the standing doctrine given above for the entirety of the 21st century,

there is now the curious case of *Dacus v. Parker*, 466 S.W.3d 820 (Tex. 2015) to consider.

The *Dacus* case began in 2010 as an election contest of a city charter amendment election for the city of Houston, and the main point of the case was whether the proposition's language as it appeared on the ballot was misleading. *See Perez v. Turner*, 629 S.W.3d 270, 275 (Tex. App. 2019). This case ultimately took about seven years to properly conclude, and it made its way to the Texas Supreme Court in addition to generating two separate opinions by the Fourteenth Court of Appeals. *See Id*. Despite this storied history, the issue of the standing of the *Dacus* contestants is never made a central point of argument, but there is still some important information to be gathered on the subject.

The petition of the *Dacus* contestants was amended twice over the years, so there are three different versions of it in total with the second amended petition being filed after the Texas Supreme Court gave their opinion. *See* Exhibit A; Exhibit B; Exhibit C. In all three versions, the contestants only claimed standing "Pursuant to Section 233.002 of the Texas Election Code" as well as the fact that they voted against the proposition.

26

Exhibit A, page 1; Exhibit B, page 1; Exhibit C, pages 1-2.

Nowhere in their petitions did they ever claim they suffered any

personal injury as a result of misleading language or for any other

reason. The Fourteenth Court of Appeals implicitly corroborated

this assessment in a footnote to their opinion published prior to

the Texas Supreme Court's opinion, as follows:

> Moreover, the record does not show that the
> contestants have standing to litigate such a
> challenge[ to the city's implementation ]. *See Brown v.*
> *Todd*, 53 S.W.3d 297, 302 (Tex.2001) ("No Texas court
> has ever recognized that a plaintiff's status as a voter,
> without more, confers standing to challenge the
> lawfulness of governmental acts. Our decisions have
> always required a plaintiff to allege some injury distinct
> from that sustained by the public at large.").

*Dacus v. Parker*, 383 S.W.3d 557, 568 n. 7 (Tex. App. 2012).

By including a quote about the necessity of both a distinct

injury in addition to being a voter for standing, the

Fourteenth Court of Appeals implied the contestants did not show or even allege any such injury. This was corroborated by the Texas Supreme Court, who made no mention of any personal injury the voters may have sustained. *See Dacus v. Parker*, 466 S.W.3d 820, 822 (Tex. 2015) ("Shortly after the election, several voters...filed an election contest.").

In spite of making no claim of personal injury, the Texas Supreme Court concluded that "[i]t is not disputed in this summary judgment proceeding that they have standing as registered qualified voters in Harris County, Texas. *See* TEX . ELEC. CODE § 233.002." *Dacus v. Parker*, 466 S.W.3d 820, 822 n. 2 (Tex. 2015). Unfortunately, the Texas Supreme Court did not directly comment any further on the contestants' standing, but other parts of their opinion as well as other cases that put *Dacus* in context indicate they believe election contests on measures are a special exception to the standing doctrine.

First, the Texas Supreme Court described the overall proceeding as an "election contest" several times. *See*, e.g., *Id*. at 820 ("In this election contest, we consider..."). This tells us that they thought of the overall proceeding as an election contest

first and foremost rather than only a summary judgment proceeding—implied by the quote regarding standing above—or another kind of proceeding masquerading as an election contest —a claim essentially made by the Fourteenth Court of Appeals. *See Dacus v. Parker*, 383 S.W.3d 557, 568 (Tex. App. 2012) ("The contestants' true complaint is not that the proposition on the ballot misled voters about the measure's contents; their complaint is that the measure itself was misleading."). That they thought of the proceeding as an election contest means their holding about standing would extend to other election contests on measures.

Second, "[b]ecause standing is required for subject-matter jurisdiction, it can be—and if in doubt, must be—raised by a court on its own at any time." *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 580 (Tex. 2013); *See also Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 484 (Tex. 2018). At the level of the Texas Supreme Court, they may "direct[] the parties to brief the subject[ of standing]" if the standing of either party is in doubt. *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 580 (Tex. 2013). However, that did not occur in the *Dacus* case. Instead, the Court

29

merely affirmed the contestants possessed standing, which, of course, showed that the Court had no doubts about their standing. It is perhaps notable that they also included a section in their opinion discussing their own jurisdiction over the *Dacus* case, so the Court was not simply avoiding the subject of jurisdiction. *See Dacus v. Parker*, 466 S.W.3d 820, 822-23 (Tex. 2015). Moreover, it is assuredly notable that the opinions for *Fin. Comm'n of Tex. v. Norwood* and *Meyers v. JDC/Firethorne, Ltd.* were published, respectively, in 2013 and 2018, which are before and after the *Dacus* opinion was published. This shows that the holding that an appellate court can raise standing as an issue sua sponte was not abandoned following *Fin. Comm'n of Tex. v. Norwood*, and incidentally, the holding itself actually goes all the way back to *Tex. Ass'n of Bus. v. Tex. Air Control Bd.* in 1993. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445-46 (Tex. 1993) ("Consequently, we proceed to determine here, on our own motion, whether [the petitioner] has standing to bring this suit.").

Third, as implied in the preceding paragraph, the Texas Supreme Court has the authority to declare that a trial court lacks

subject-matter jurisdiction. *See*, e.g., *Blue Crs. Blue Shld. of Texas v. Duenez*, 201 S.W.3d 674, 675 (Tex. 2006) ("[The defendant] appealed, arguing that the trial court lacked subject-matter jurisdiction...[w]e agree."). If this authority is combined with the information from the preceding paragraph, the Texas Supreme Court could have reviewed the *Dacus* case's record, asked the parties to address the subject of standing, and potentially declared the trial court never even had jurisdiction in the first place. However, none of that happened, and considering the standing doctrine the Texas Supreme Court has been applying and reinforcing "in this century[,]" this chain of events is conspicuous by its absence. *Pike v. Tex. EMC Mgmt.*, 610 S.W.3d 763, 774 (Tex. 2020).

Fourth, the *Dacus* case was recently cited and contextualized in another case concerning a proposed city charter amendment. In the case of *In Re Morris*, the Texas Supreme Court denied the relators' request to amend the ballot language, which was one of three requests made to that Court, and they noted that relators do not have standing to seek such relief in a pre-election suit, only in a post-election challenge. *See In re*

*Morris*, No. 23-0111 at *15-16 (Tex. Mar. 17, 2023). Specifically, "[r]elators' alleged injury from the [proposed city charter amendment]...does not materialize unless and until the proposition passes, at which point it is a subject for an election challenge brought by any 'qualified voter[] of the territory covered by an election.'" *Id*. at *16 (citing Tex. Elec. Code § 233.002 and *Dacus v. Parker*, 466 S.W.3d 820, 828 (Tex. 2015)). For *In Re Morris*, the only injury the relators would allegedly suffer would be that the city charter could not be amended again for another two years, which is, of course, an injury shared by the general public. *See In re Morris*, No. 23-0111 at *11 (Tex. Mar. 17, 2023) ("Relators ascribe no particularized injury to themselves, but rather point to the inability of San Antonians to amend their charter for another two years.") (citation omitted). Clearly, the Texas Supreme Court held that such generalized, impersonal injuries would not grant relators standing to request amendment of the ballot language in a pre-election suit, but conversely, the relators would have standing with such injuries for a post-election suit, such as an election contest. They relied on their prior holding in *Dacus v. Parker* to support that conclusion.

32

Furthermore, although the standing issue was most clearly discussed in the context of changing the language on the ballot, the Texas Supreme Court's words imply that relators would have standing in a post-election contest even for their other claims. For example, when addressing relators' request to move the date for the city charter amendment election, they stated that "[w]e do not foreclose a review of the timing of this special election in an election contest[,]" and they noted that relators' alleged harm could be alleviated if the election were declared void as part of an election contest, which was subsequently used as a reason to not move the special election. *In re Morris*, No. 23-0111 at *10 n. 30 (Tex. Mar. 17, 2023); *See Id*. at *11 (citing various Election Code statutes). Also, when discussing another one of relators' requests, the Texas Supreme Court concluded that "[w]hether the [proposed city charter amendment] violates the Local Government Code or other state law, and the remedy for such violations, are *questions that the courts may resolve in an election contest* or other post-election proceeding…" *Id*. at *15 (emphasis added). There are other instances I could point out, but I may already be belaboring my point. Assuming the Texas

Supreme Court was not simply mocking the relators throughout their opinion, they wrote as if relators could prosecute and win an election contest on any or all of their claims without suffering any personalized injury.

In summary, there are several contextual factors related to the *Dacus* case: (1) the contestants never claimed they suffered a personal injury, which was implicitly corroborated by both the Fourteenth Court of Appeals and the Texas Supreme Court, (2) the contestants were definitely prosecuting an election contest on a measure pursuant to Chapter 233 of the Texas Election Code, (3) the Texas Supreme Court had the authority to raise the issue of standing sua sponte, (4) they also had the authority to declare the trial court never had subject-matter jurisdiction due to the contestants not having standing, (5) standing in the true constitutional sense requires plaintiffs/contestants to have suffered an injury distinct from the public, (6) in Texas law and case law there are exceptions to constitutional standing that grant a plaintiff standing without suffering a personalized injury, and (7) the opinion given for *In re Morris* confirms that personalized injuries are not required to initiate or sustain

election contests on measures. Considering all of these factors and the fact the *Dacus* contestants were held to have standing, the only explanation is that the Texas Supreme Court has concluded that the standing requirements for election contests on measures are an exception to the usual doctrine. Specifically, any voter who took part in the election may contest it for lack of proper procedure, fraud, or any of the other allegations one may bring in an election contest. This conclusion actually comports with an earlier one given in *Andrade v. NAACP of Austin*. Namely, "[the Texas Supreme Court has] also been careful to suggest that challenges to the election process may [not require an injury distinct from the public]." *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 8 (Tex. 2011) (citing *Brown v. Todd*, 53 S.W.3d 297, 302 (Tex.2001)). Challenges to the election process are precisely what election contests are about, and what this particular contest is about. *See* Tex. Elec. Code § 221.003; *See*, e.g., CR.780-82.

## III. The Secretary of State Was Properly Served

*a. The Citation Requirements of Texas Election Code §§ 233.007, 233.008 Are Not Jurisdictional*

I must first mention something about Appellants' argument and the case law they cite in support of it. Although Appellants correctly identify the importance of proper citation and service in establishing personal jurisdiction, there are several errors that invalidate their argument. For instance, the four cases they cite as precedent for strict compliance with the rules governing citation and service are all appeals from default judgments. *See TAC Americas, Inc. v. Boothe*, 94 S.W.3d 315, 317 (Tex. App.--Austin 2002) ("This is an appeal from a no-answer default judgment..."); *Mansell v. Ins. Co. of the W*, 203 S.W.3d 499, 500 (Tex. App.--Houston [14th Dist.] 2006) ("This is a restricted appeal from a default judgment."); *Medeles v. Nunez*, 923 S.W.2d 659, 660 (Tex. App--Houston [1st Dist] 1996) ("[W]e are asked to decide if a...default judgment...should stand."); *Garcia v. Ennis*, 554 S.W.3d 209, 211 (Tex. App.--Fort Worth 2018) ("Appellant...filed a petition for bill of review to set aside a default judgment..."). In other words, one of the parties in those cases was either not served a citation or was served a defective citation and had a default judgment brought against them as a result. However, that is not the situation here, and in fact, default

36

judgments are statutorily prohibited in election contests. *See* Tex. Elec. Code § 221.004 ("A default judgment may not be rendered in an election contest."). Instead, Appellants (1) filed their Plea within the time required for an answer as if the citation were correct and (2) informed the Court and the other party of the defect through their Plea before any judgment was entered. While those cases are important, their conclusions should be read in the context of default judgments, and all of them were remanded for further proceedings, which indicates they do not support the idea of dismissing a case due to jurisdictional defects related to a citation. *See*, e.g., *Mansell v. Ins. Co. of the W*, 203 S.W.3d 499, 502 (Tex. App. 2006) ("[W]e reverse the trial court's judgment and remand for further proceedings consistent with this opinion."). Remanding for further proceedings is consistent with the Texas Supreme Court's opinion that "[a] direct attack–such as an appeal, a motion for new trial, or a bill of review–attempts to *correct, amend, modify or vacate a judgment*[,]" and appeals and bills of review were brought forward in the cases being discussed to do just that. *PNS Stores, Inc. v. Rivera ex rel. Rivera*, 379

37

S.W.3d 267, 271 (Tex. 2012). Therefore, those cases are not controlling here.

One case that is controlling and instructive here is *City of Houston v. Bryant*, 516 S.W.3d 47 (Tex. App. 2017). In that case, a citation did not include language required by Texas Election Code section 233.008, and the City of Houston filed a Plea to the Jurisdiction claiming the trial court never acquired jurisdiction over the election contest. *See Id*. at 49. I should note that the original citation in, at the very least, the Kuslich case also did not contain the language required by section 233.008. *See* CR.57. It is unknown why Appellants do not include this in their argument despite already being informed of it. *See*, e.g., CR.618. While the court in *City of Houston v. Bryant* conceded that "[s]ection 233.008 is clearly mandatory," they noted that "'just because a statutory requirement is mandatory does not mean that compliance with it is jurisdictional.'" *City of Houston v. Bryant*, 516 S.W.3d 47, 52 (Tex. App. 2017) (citation omitted). "The Texas Supreme Court has held that because deeming a provision jurisdictional '"opens the way to making judgments vulnerable to delayed attack for a variety of irregularities that perhaps better

38

ought to be sealed in a judgment,"' it has been 'reluctant to conclude that a provision is jurisdictional, absent a clear legislative intent to that effect.' [*City of DeSoto v. White*, 288 S.W.3d 389, 393 (Tex. 2009)], (quoting Dubai Petroleum Co. v. Kazi, 12 S.W.3d 71, 76 (Tex. 2000))." *Id.*

Ultimately, the court determined that 233.008 is not jurisdictional. *See Id.* at 54. To determine this, the court used "statutory interpretation principles, with the goal of ascertaining 'legislative intent by examining the statute's plain language.' [*City of DeSoto v. White*, 288 S.W.3d 389, 393, 394 (Tex. 2009)]." *Id.* at 52. By this method, the court found that "section 233.008 does not contain any explicit language indicating that this requirement is jurisdictional." *Id.* Section 233.008 does not set a deadline for service of process, it does not alter how service should be effected aside from an additional direction for the delivering officer to return the citation if it is not served within twenty days, and it does not prohibit the reissuance of a citation nor a second attempt at serving it. *See Id.* at 52-53. "Likewise, the statute does not provide any specific consequence for noncompliance with section 233.008. See [*City of DeSoto v.*

*White*, 288 S.W.3d 389, 396 (Tex. 2009)] (holding that courts may look 'for "the presence or absence of specific consequences of noncompliance" in determining whether a provision is jurisdictional')." *Id*. at 53.

How it was determined that section 233.008 was not jurisdictional is important because all of the reasons given in *City of Houston v. Bryant* apply to section 233.007 as well. As a reminder, section 233.007(a) reads in relevant part that "[a] contestee must file an answer to the contestant's petition not later than...(2) 10 a.m. of the 20th day after the date of service of citation, if the contested election is statewide" and section 233.007(b) reads that "[t]he citation must command the contestee to answer by the specified deadline." Tex. Elec. Code § 233.007. From reading 233.007, it is clear that it does not set a deadline for service of process, does not alter how service should be effected aside from different language in the citation itself, does not prohibit reissuance of a citation nor a second attempt at serving it, and it does not provide any specific consequence for noncompliance. Therefore, the requirements given in sections

233.007 and 233.008 of the Texas Election Code are not jurisdictional.

Since the requirements of those statutes are not jurisdictional, it was inappropriate for Appellants to challenge the citation with a Plea to the Jurisdiction. "Although a claim of a defect in the service of process challenges whether the trial court's personal jurisdiction over the defendant has been properly invoked, such claims must be raised in a motion to quash, not in a jurisdictional challenge[.]" *City of Houston v. Bryant*, 516 S.W.3d 47, 55 (Tex. App. 2017) (citation omitted). "This is because a curable defect in service of process does not defeat a defendant's amenability to the court's process and serves only to provide the defendant with more time to answer." *Id*. (citations omitted).

Regarding the concept of a "curable defect in service of process", Rule 118 of the Texas Rules of Civil Procedure states that "[a]t any time in its discretion and upon such notice and on such terms as it deems just, the court may allow any process or proof of service thereof to be amended, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process issued." Tex. R. Civ. P. 118.

Moreover, "Texas courts for decades have held that a return amended under rule 118 relates back to and is regarded as filed when the original return was filed." *LEJ Development Corporation and L.E. Jowell, Jr. v. Southwest Bank*, 407 S.W.3d 863, 870 (Tex. App. 2013) (Citation omitted). Although that quote from *LEJ Development Corporation* refers to the return and not the citation itself, Texas courts have treated the two interchangeably if not outright stating that the return is part of the citation. *See*, e.g., *McCoy v. McCoy*, No. 02-17-00275-CV at *3 and *10 (Tex. App. Nov. 15, 2018) ("[Appellee] moved the trial court for leave to file an amended citation...[b]ecause the trial court no longer had plenary power over the decree, it could not grant [Appellee] leave to amend the service return"). Therefore, curing the citation of defects is decidedly within the court's power. At least one Appellee has already motioned to amend the citation to do just that, but the motion was denied for unknown reasons. *See* CR.617-34; CR.834.

*b. Appellants' Claims Regarding Defective Process Were Waived*

In addition, there is Rule 120 of the Texas Rules of Civil Procedure that provides that any general appearance by a

42

defendant, their agent, or their attorney "shall have the same force and effect as if the citation had been duly issued and served as provided by law." Tex. R. Civ. P. 120. Regarding the concept of a "general appearance", "[a] party enters a general appearance whenever it *invokes the judgment of the court on any question other than the court's jurisdiction*; if a defendant's act recognizes that an action is properly pending *or seeks affirmative action from the court, that is a general appearance*." *Moore Ex Rel. Moore v. Elektro-Mobil Technik GmbH*, 874 S.W.2d 324, 327 (Tex. App. 1994) (emphasis added). By this standard, Appellants made a general appearance when they motioned to consolidate the various cases and held a hearing on said motion because it sought affirmative action from the trial court. *See*, e.g., CR.645-50; Kuslich RR.23-27. By Rule 120 of the Texas Rules of Civil Procedure, this general appearance has already "cured or waived any alleged defect in service of citation." *Summersett v. Jaiyeola*, 438 S.W.3d 84, 93 (Tex. App. 2013). Thus, Appellants have effectively abandoned this argument.

*c. The Diligence in Serving the Secretary of State Defeats the Deadline to Serve*

Alternatively, *Tex. St. Univ. v. Tanner*, No. 22-0291 (Tex. May 3, 2024) is also instructive here. This recently-decided case concerns, among other things, how diligence in attempting to serve a defendant interacts with a statute of limitations. The statute of limitations referenced here is section 16.003 of the Civil Practice and Remedies Code, and combined with section 311.034 of the Government Code represents a "jurisdictional bar". *Id*. at *14. To overcome this bar in particular, a Plaintiff must bring their suit before the statute of limitations expire. "to 'bring suit' is a term of art reflecting the traditional requirements to satisfy a statute of limitations: filing the petition and achieving service of process." *Id*. at *10. This description of what it means to "bring suit" is relevant because the requirements are the same as those listed in section 233.014(b) of the Texas Election Code. *See* Tex. Elec. Code § 233.014(b) ("The contestant's petition must be filed and service of citation on the secretary of state must be obtained before the final official canvass is completed."). In other words, section 233.014(b) describes what is effectively a statute of limitations and what it takes to bring a suit before the limitations expires.

44

With this conclusion in mind, the Texas Supreme Court held in *Tex. St. Univ. v. Tanner*, No. 22-0291 (Tex. May 3, 2024) that "[d]iligence in attempting service prevents the running of limitations for as long as a plaintiff truly labors to achieve service of process." *Id*. at *6. Stated another way, "[i]f service is diligently effected after limitations has expired, the date of service will relate back to the date of filing." *Proulx v. Wells*, 235 S.W.3d 213, 215 (Tex. 2007) (citation omitted). "In assessing diligence, the relevant inquiry is whether the plaintiff acted as an ordinarily prudent person would have acted under the same or similar circumstances and was diligent up until the time the defendant was served." *Id*. at 216. "That some time has elapsed between service efforts does not alone prove a lack of diligence." *Tex. St. Univ. v. Tanner*, No. 22-0291 at *8 (Tex. May 3, 2024). However, the Texas Supreme Court clarifies that "any delay in service after limitations has run requires an explanation—and not a conclusory or cursory one, either." *Id*. Prior case examples showing a lack of diligence are presented in *Proulx v. Wells*, 235 S.W.3d 213 (Tex. 2007), and they all involve periods of inactivity or lack of diligence totaling a few months at the very least. *See*

*Id*. at 217. In summary, the jurisdictional bar of a statute of limitations–or another, similar statutory deadline–is not a hard deadline so long as the plaintiff or contestant is diligent in effecting timely service of process.

Returning to the present case and without abandoning any of my previous arguments, I allege that I was diligent in serving the Secretary of State and that my actions were those an ordinarily prudent person would make. If we are to take Appellants' claim that the Governor's proclamation was legally performed at face value, the "statute of limitations" would have "expired" on December 4, 2023. *See* CR.614-15. Although the original citation was defective, it was served out of a mistaken belief that it was not defective. After receiving the return, I believed the election contest and constitutionality challenge suit was underway, so I turned my attention to other matters, such as the holidays and amending my petition. However, I was interrupted from that endeavor–and ultimately did not return to it until several months later–by the news of Senate Bill 6 that was filed, discussed, and voted on during the fourth called session of the Legislature in 2023. *See* CR.636-37. That bill drew my

46

attention because it was intended to be retroactive to November 1, 2023 and therefore affect all of the various election contests. Also, Senator Bryan Hughes made it clear during the discussion on the bill that the Secretary of State was involved in the bill's creation, and I took these two facts as indication that my suit was underway. *See Id*. Regardless, on or about December 4, 2023, I decided to inspect the citation that was served on the Secretary, found that it was deficient in ways already discussed, and requested a new one on December 5 under Rule 99(a). *See* CR.72-73; *See* Tex. R. Civ. P. 99(a) ("...Upon request, separate or additional citations shall be issued by the clerk..."). That citation was served on December 6, 2023. *See* CR.75. From the foregoing, I believe it is clear that I was diligent in serving the Secretary, and the second citation was served merely two days after the Governor's proclamation rather than months as happened in other cases. *See Proulx v. Wells*, 235 S.W.3d 213, 217 (Tex. 2007). Even considering all of that, I still filed a motion to amend the first citation that was served. *See* CR.617-634.

Finally, I should emphasize my belief that the holdings of *Tex. St. Univ. v. Tanner*, No. 22-0291 (Tex. May 3, 2024) and *City*

47

*of Houston v. Bryant*, 516 S.W.3d 47 (Tex. App. 2017) are not contradictory. This hinges on the fact that *Tex. St. Univ. v. Tanner* concerns itself with the *timeliness* of service rather than the quality of the citation, and in fact, the Texas Supreme Court seems to presume throughout the opinion that the citation the plaintiff was trying to serve was utterly without defect. *See generally Tex. St. Univ. v. Tanner*, No. 22-0291 (Tex. May 3, 2024). By contrast, *City of Houston v. Bryant* considered a citation that was defective but the timeliness of service was not an issue. *See generally City of Houston v. Bryant*, 516 S.W.3d 47 (Tex. App. 2017). Thus, those two cases are not contradictory.

## IV. Appellees Have Sufficiently Pled Election Contests and Any Defects Are Curable

Appellants have adequately described what a plaintiff or contestant must claim to waive sovereign immunity, but in reaching their conclusion for this part, they misrepresented Appellees' petitions and ignored relevant case law. However, it should first be noted that their claim that Appellees did not plead facts supporting a different election result is contradicted by Appellants' own Statement of Facts. *See* Appellants' Brief ¶¶ 26-

27.    In that section, they say "[e]ach [Appellee] claimed that electronic voting systems used throughout the State in the November 2023 election did not meet the [Election] Code's requirements for certification, thereby rendering *all* votes cast by registered voters in Texas illegal. *See generally* CR.5–25; Dickinson Suppl. CR.5–21; Highsmith Suppl. CR.4–21; Pique Suppl. CR.6–27." Appellants' Brief ¶ 9 (emphasis in original).  Obviously, any claim that all votes cast in an election are illegal is a voting irregularity that would "materially affect the results of the election."  *Chumney v. Craig*, 805 S.W.2d 864, 870 (Tex. App.—Waco 1991, writ denied).

Turning to Appellees' petitions, I have already asserted the ubiquitousness of electronic voting systems across Texas, how all votes cast with such systems are illegal—complete with reasoning and citations—, and how that would materially affect the election. *See* CR.780-90, 794-95.  These elements are in the other petitions as well.  *See* Dickinson Suppl. CR.762-847;  Highsmith Suppl. CR.93-162;  Pique Suppl. CR.1884-1918.  Therefore, all Appellees have already satisfied the burden of claiming that "the outcome of the contested election, as shown by the final canvass, is not

the true outcome...."  Tex. Elec. Code § 221.003;  *See also* Tex. Elec. Code § 233.014(g) ("Any question relating to the validity or outcome of a constitutional amendment election may be raised in an election contest. A contest is the exclusive method for adjudicating such questions.").

Also, the case law Appellants use to support their claim are all appeals from trials on the merits.  In *Green v. Reyes*, the appellate court notes the trial court "heard testimony from...illegal voters" that occurred "*[d]uring an eleven day trial*[.]" *Green v. Reyes*, 836 S.W.2d 203, 204 (Tex. App. 1992) (emphasis added).  In *Chumney v. Craig*, the appellate court states that "*[a]fter a nonjury trial*, the court denied all relief sought by Chumney and filed findings of fact and conclusions of law." *Chumney v. Craig*, 805 S.W.2d 864, 865 (Tex. App. 1991) (emphasis added).  In *Goodman v. Wise*, the appellate court describes a series of events before saying "[f]inally, the trial court went to trial on the merits of the election contest."  *Goodman v. Wise*, 620 S.W.2d 857, 859 (Tex. App. 1981).  These opinions are indeed important, but their holdings refer to or are meant to be construed in the context of election contests that have already

gone to trial. Since the present cases never reached such a stage, there has never been an opportunity for Appellees to "[offer] [] factual enhancement to their claims[.]" Appellants' Brief ¶ 27. Presenting it at this stage would have been inappropriate anyway since "[t]he purpose of a dilatory plea[, such as a plea to the jurisdiction,] is not to force the plaintiffs to preview their case on the merits but to establish a reason why the merits of the plaintiffs' claims should never be reached." *Bland ISD v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). In addition, "pleadings are not evidence unless offered and admitted as such." *In Re Marriage of M.C.*, 65 S.W.3d 188, 193 (Tex. App. 2001). All of this means Appellants' argument is inherently contradictory as it presumes the election contest has already gone to trial while simultaneously arguing it should never reach that stage.

Moreover, even if the petitions are deficient enough such that valid claims have not been made, dismissal with prejudice is not the answer. According to the Texas Supreme Court, "[i]f the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of

pleading sufficiency and the plaintiffs should be afforded the opportunity to amend." *Texas Dept. Parks Wildlife v. Miranda*, 133 S.W.3d 217, 226-27 (Tex. 2004). The various petitions already imply what Appellants claim is missing, so any deficiency is not incurable.

Notwithstanding what I have just said on the subject, I do believe my own petition could be improved to make it more clear. For starters, I would remove the ambiguity in my petition by focusing on how the election process was tainted by illegalities since that is ultimately the main point. *See Blum v. Lanier*, 997 S.W.2d 259, 262 (Tex. 1999) ("An election contest is a special proceeding created by the Legislature to provide a remedy for elections tainted by fraud, illegality or other irregularity.") (citing *De Shazo v. Webb*, 113 S.W.2d 519, 524 (Tex. 1938)). In addition, I would update the section on standing to include the information presented in this brief in a more condensed form.

I would also provide numbers to indicate the scope of the use of electronic voting systems and thereby the impact of the illegalities. Accurate information for this could be obtained from the annual voting system reports that each county using

52

electronic voting systems is required to file with the Secretary of State.  *See* Tex. Elec. Code § 123.061.  It should be noted that I could not have obtained those reports (and I do not have them presently) before filing the election contest because the window to file the reports for the 2023 election was in July of 2024.  *See* Tex. Elec. Code § 123.062 ("The report must be filed *on or after* July 1 and *before* July 15.") (emphasis added).

Nevertheless, the Secretary of State has what looks to be an informal list of electronic voting systems used by each county. *See, generally,* Texas Secretary of State, *Voting Systems by County* (revised Feb. 6, 2024), https://www.sos.state.tx.us/elections/forms/sysexam/voting-sys-bycounty.pdf.  From this, we can confirm that the following counties all use electronic voting systems: Bexar, Collin, Dallas, Denton, Fort Bend, Harris, Tarrant, Travis, and Williamson.  *See Id.*  If we use those counties as a sample and the numbers given in the canvass in the clerk's record, we see that propositions 5 and 10 had 2,521,410 and 2,492,145 total voters, respectively, both for and against.  *See* CR.97-98.  For propositions 5 and 10, the sample counties alone had 1,358,005 and 1,338,575 total

voters, respectively. *See* CR.173-78, 186-88, 263-68, 276-78. For proposition 9, we can confirm from the same list of counties that the following additional ones use electronic voting systems as well: Bell, Brazoria, Brazos, Cameron, Comal, El Paso, Galveston, Hidalgo, Jefferson, Johnson, Lubbock, Midland, Nueces, and Smith. If we add the total voters for all of those counties plus the ones from the sample counties already used, we get 1,747,156 voters. *See* CR.245-52, 254-55, 258-60. For propositions 5, 9, and 10, the margins of victory were 723,830 votes, 1,728,761 votes, and 248,993 votes, respectively. *See* CR.97-98. With these numbers, it is easy to see that even just the voters from a select sample of counties that use electronic voting systems is already greater than the margin of victory for all three propositions, and I emphasize that there are many other counties, such as Parker, Ellis, Liberty, etc., that use voting systems that were not included in this count. *See, generally,* Texas Secretary of State, *Voting Systems by County* (revised Feb. 6, 2024), https://www.sos.state.tx.us/elections/forms/sysexam/voting-sys-bycounty.pdf.

54

Since the number of votes cast using illegal voting systems—thus, illegal votes—is greater than the margin of victory, there is no actual need to determine whether any given vote was for or against a measure. *See* Tex. Elec. Code § 221.009(b) ("If the number of illegal votes is equal to or greater than the number of votes necessary to change the outcome of an election, the tribunal may declare the election void without attempting to determine how individual voters voted."); *Gonzalez v. Villarreal*, 251 S.W.3d 763, 782 (Tex. App. 2008) ("[I]f a trial court determines that illegal votes were cast and that the number of illegal votes equals or is greater than the margin of victory, the trial court can then declare the election void without ever inquiring as to the [measure] for [which] those illegal votes were cast.") (citations omitted). Although it *might* be possible to determine the true outcome of the elections by subtracting all of the illegal votes, that would be a massive undertaking considering the election was statewide, there are millions of votes, some of the ballots may be lost, and it would be unfair to the voters themselves because they did not decide to use electronic voting systems for that election. Additionally, "The election

code...recognizes that it may be impracticable or even impossible to determine for [which measure] an illegal vote was cast. The election code does not *require* such an inquiry." *Id.* (emphasis in original). Thus, I believe voiding the election would be the most practical solution.

I say and emphasize again that any defects that may be in the pleadings are not incurable because the information is already implied in the pleadings as they are. For example, the analysis of the number of voters who used electronic voting systems above and the conclusion that it would be difficult or impossible to determine the true result of the election is implied. *See* CR.782 ("Due to the ubiquitous use of these [electronic voting] systems in the state, the true outcome of the election cannot be determined.") (citing *Voting Systems by County*). Therefore, if there truly are deficiencies in the pleadings, Appellees should be afforded an opportunity to amend them.

## P r a y e r

For the foregoing reasons, I pray that this Court affirm the denial of Appellants' Plea to the Jurisdiction.

56

Respectfully submitted,

/s/ *Lars Kuslich*
Lars Kuslich
P.O. Box 1908
Liberty, TX 77575
936-346-5464
blanket113@protonmail.com

# C e r t i f i c a t e   o f   C o m p l i a n c e

I, Lars Kuslich, certify that this APPELLEE KUSLICH'S SECOND AMENDED BRIEF was finally edited using LibreOffice Writer 7.3.7.2, that the document was constructed using at least 14-point size typeface for regular paragraphs and 12-point size typeface for footnotes, and that the word processor counted 9211 words in this brief other than the excluded sections listed in Tex. R. App. P. 9.4(i)(1).

/s/ *Lars Kuslich*
Lars Kuslich
P.O. Box 1908
Liberty, TX 77575
936-346-5464
blanket113@protonmail.com

# C e r t i f i c a t e   o f   S e r v i c e

I, Lars Kuslich, certify that a true and correct copy of

APPELLEE KUSLICH'S SECOND AMENDED BRIEF was filed and

served via e-service efile (eFileTexas.gov) on January 28, 2025 to

all other Appellees and to:

**Stephanie A. Criscione**
Texas Bar No. 24109768
**William D. Wassdorf**
Texas Bar No. 24103022
Assistant Attorneys General
General Litigation Division
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel: (512) 463-2120
Fax: (512) 320-0667
stephanie.criscione@oag.texas.gov
will.wassdorf@oag.texas.gov

By: /s/ *Lars Kuslich*
Lars Kuslich
P.O. Box 1908
Liberty, TX 77575
936-346-5464
blanket113@protonmail.com

59

# APPENDIX

60

# EXHIBIT A

Certified Document Number: 47222447 - Page 1 of 5

Filed 10 December 15 P4:49
Loren Jackson - District Clerk
Harris County
ED101J016097886
By: Nelson Cuero

## 2010-81591 / Court: 152
CAUSE NO. _____

ALLEN MARK DACUS, ELIZABETH C. §
PEREZ and REV. ROBERT JEFFERSON §
    Contestants. §
          §
v. §
          §
ANNISE D. PARKER, MAYOR and §
CITY OF HOUSTON, §
    Contestees. §

IN THE DISTRICT COURT

OF HARRIS COUNTY, TEXAS

_____ JUDICIAL DISTRICT

### CONTESTANTS' ELECTION CONTEST

TO THE HONORABLE JUDGE OF THIS COURT:

Allen Mark Dacus, Elizabeth C. Perez and Rev. Robert Jefferson, (hereinafter

referred to as "Contestants"), hereby file Contestants' Election Contest, and in support

thereof shows as follows:

### I.
### DISCOVERY CONTROL PLAN

1.    Plaintiffs/Contestants intend this case to be conducted under a Level 2 discovery

control plan.

### II.
### THE PARTIES

2.    Pursuant to Section 233.002 of the Texas Election Code, Contestants Allen Mark

Dacus, Elizabeth C. Perez and Rev. Robert Jefferson have standing to bring an election

contest in civil district court concerning a proposition ("Propositions 1") that was on the

November 2, 2010 ballot in Harris County because they are qualified registered voters

who reside in Harris County, Texas. Additionally, Contestants voted against Proposition

1 in the City of Houston General Election held on November 2, 2010.

3.    In accordance with the CIVIL PRACTICE AND REMEDIES CODE § 17.024(b),

1

Contestees Annise D. Parker, Mayor and the City of Houston may be served by serving the mayor, clerk, secretary or treasurer. According to the City of Houston website, the Mayor may be served with citation at the City of Houston, 900 Bagby, Houston, Texas 77002. The City of Houston should be served by serving the Mayor as well. Moreover, according to Section 233.003(2) of the Texas Election Code, one of the Contestees may be the presiding officer of the authority that ordered the contested election, which would be Annise D. Parker, Mayor, who may be served as referenced above.

III.
VENUE

4. In accordance with TEX. ELEC. CODE § 221.002(a), the district court has exclusive jurisdiction over this election contest.

5. In accordance with TEX. ELEC. CODE § 233.005, the district court in Harris County, Texas is the appropriate venue for this election contest. Furthermore, if such be necessary, venue in this action is proper and maintainable in Harris County, Texas under Civil Practice and Remedies Code § 15.002(a) because the events or omissions giving rise to the claim occurred in Harris County, Texas. Specifically, the City of Houston's General Election concerning Proposition 1 was held in Harris County on November 2, 2010. However, pursuant to Section 231.004 of the Texas Election Code, no Judge in Harris County may hear this suit, and a Judge from another County must be assigned.

IV.
FACTS

6. On November 2, 2010, registered voters of the City of Houston were asked to vote on several propositions, including a proposition providing for the creation of a dedicated funding source to enhance, improve and renew the City's drainage systems and

Certified Document Number: 47222447 - Page 2 of 5

2

streets. ("Proposition 1"). The ballot language for Proposition 1 read as follows :

> PROPOSITION NO. 1 - CHARTER AMENDMENT PROPOSITION
> Relating to the Creation of a Dedicated Funding Source to Enhance, Improve and Renew Drainage Systems and Streets. Shall the City Charter of the City of Houston be amended to provide for the enhancement, improvement and ongoing renewal of Houston's drainage and streets by creating a Dedicated Pay-As-You-Go Fund for Drainage and Streets?

7.      The voters of the City of Houston passed Proposition on November 2, 2010. Subsequently, the City of Houston canvassed the results on November 15, 2010.

## V.
## CAUSES OF ACTION

8.      The Local Government Code, a state statute, addresses city charters. Section 9.004 (d) prohibits an amendment from containing more than one subject. As stated above, Proposition 1 violated this statute because it concerns more than one subject. Therefore, Proposition 1 is illegal and cannot be implemented as a charter amendment.

9.      Further, state law requires that a proposition be described with such definiteness and certainty that the voters are not misled." *Blum v. Lanier*, 997 S.W.2d 259 (Tex. 1999). In this regard, the ballot should contain a description of the measure "in such language as to constitute a fair portrayal of [its] chief features . . . in words of plain meaning, so that it can be understood by persons entitled to vote." *Wright v. Board of Trustees of Tatum Indep. School Dist.*, 520 S.W.2d 787 (Tex. Civ. App.—Tyler 1975, writ dism'd). As such, "a ballot adequately describes a proposed amendment if it gives fair notice to the voter of average intelligence by directing him to the amendment so that he can discern its identity and distinguish it from other propositions on the ballot." *Hardy v. Hannah*, 849 S.W.2d 355 (Tex. App.—Austin 1992, writ denied). Proposition 1 clearly did not do this. Proposition 1's ballot language did not adequately describe what

Certified Document Number: 47222447 - Page 3 of 5

3

the electorate was actually being asked to vote on. Accordingly, the ballot language does not accurately describe the object and effect of Proposition 1, causing the voters to be intentionally misled.

10. Finally, Proposition 1 violates State Law in at least two respects. First, in accordance with TEXAS LOCAL GOVERNMENT CODE § 552.045(c), the governing body was required to hold a public hearing to consider the proposed ordinance. The City of Houston did not do this, thus Proposition 1 violates state law and is illegal. Second, as required by TEXAS LOCAL GOVERNMENT CODE § 552.049, the income from a drainage utility system must be segregated and completely identifiable in municipal accounts. Again, the City of Houston has failed to comply with this state statute. Therefore, Proposition 1 should be declared illegal.

11. For all of the foregoing reasons, Contestants seek a declaration from this Court stating that Proposition 1 is illegal and invalid as a matter of law, and now file this election contest to invalidate the outcome of the election on this particular Proposition. It is possible that some or all of these claims are not considered to be properly raised by an election contest, but should actually be raised by a suit for declaratory judgment. Thus, in an abundance of caution, a suit for declaratory judgment is also being filed concurrently with this election contest.

VI.
CONCLUSION

12. For the reasons detailed above, Contestants respectfully request that upon final hearing, this Court sustain this Election Contest and declare that Proposition 1 is illegal and invalid as a matter of law, as well as award all costs of suit, and such other and further relief to which Contestants may show themselves to be justly entitled.

4

Certified Document Number: 47222447 - Page 4 of 5

Respectfully Submitted,

HOOVER SLOVACEK LLP

BY: _____

Joseph O. Slovacek
State Bar No. 18512300
5847 San Felipe, Suite 2200
Houston, TX 77057
713-944-8646 (telephone)
713-977-5395 (facsimile)

ATTORNEYS FOR CONTESTANTS

5

Certified Document Number: 47222447 - Page 5 of 5



I, Marilyn Burgess, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   January 27, 2025

Certified Document Number:        47222447 Total Pages:  5

Marilyn Burgess, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 51.301 and 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

# EXHIBIT B

CAUSE NO. 2010-81591

| | | |
|---|---|---|
| ALLEN MARK DACUS, ELIZABETH C. | § | IN THE DISTRICT COURT |
| PEREZ and REV. ROBERT JEFFERSON | § | |
| Contestants, | § | |
| | § | |
| VS. | § | OF HARRIS COUNTY, TEXAS |
| | § | |
| ANNISE D. PARKER, MAYOR and | § | |
| CITY OF HOUSTON, | § | |
| Contestees. | § | 234TH JUDICIAL DISTRICT |

## CONTESTANTS' FIRST AMENDED ELECTION CONTEST

TO THE HONORABLE JUDGE OF THIS COURT:

Allen Mark Dacus, Elizabeth C. Perez and Rev. Robert Jefferson, (hereinafter referred to as "Contestants"), hereby file this Contestants' First Amended Election Contest, and in support thereof shows as follows:

### I.
### DISCOVERY CONTROL PLAN

1.      Contestants intend this case to be conducted under a Level 2 discovery control plan.

### II.
### THE PARTIES

2.      Pursuant to Section 233.002 of the Texas Election Code, Contestants Allen Mark Dacus, Elizabeth C. Perez and Rev. Robert Jefferson have standing to bring an election contest in civil district court concerning a proposition ("Propositions 1") that was on the November 2, 2010 ballot in Harris County because they are qualified registered voters who reside in Harris County, Texas. Additionally, Contestants voted against Proposition 1 in the City of Houston General Election held on November 2, 2010.

3.      In accordance with the CIVIL PRACTICE AND REMEDIES CODE § 17.024(b), Contestees Annise D. Parker, Mayor and the City of Houston were served with Contestants' Election

Certified Document Number: 48143836 - Page 1 of 5

Contest and have made an appearance herein. Thus, this First Amended Election Contest may be served by serving David Feldman, the City Attorney for the City of Houston.

III.
VENUE

4.      In accordance with TEX. ELEC. CODE § 221.002(a), the district court has exclusive jurisdiction over this election contest.

5.      In accordance with TEX. ELEC. CODE § 233.005, the district court in Harris County, Texas is the appropriate venue for this election contest. Furthermore, if such be necessary, venue in this action is proper and maintainable in Harris County, Texas under Civil Practice and Remedies Code § 15.002(a) because the events or omissions giving rise to the claim occurred in Harris County, Texas. Specifically, the City of Houston's General Election concerning Proposition 1 was held in Harris County, Fort Bend County and Montgomery County on November 2, 2010. However, pursuant to Section 231.004 of the Texas Election Code, no Judge in Harris, Fort Bend or Montgomery County may hear this suit, and a Judge from another County must be assigned.

IV.
FACTS

6.      On November 2, 2010, registered voters of the City of Houston were asked to vote on several propositions, including a proposition providing for the creation of a dedicated funding source to enhance, improve and renew the City's drainage systems and streets. ("Proposition 1"). The ballot language for Proposition 1 read as follows :

> PROPOSITION NO. 1 - CHARTER AMENDMENT PROPOSITION
> Relating to the Creation of a Dedicated Funding Source to Enhance, Improve and Renew Drainage Systems and Streets. Shall the City Charter of the City of Houston be amended to provide for the enhancement, improvement and ongoing renewal of Houston's drainage and streets by creating a Dedicated Pay-As-You-Go Fund for Drainage and Streets?

Certified Document Number: 48143836 - Page 2 of 5

7. The voters of the City of Houston passed Proposition on November 2, 2010. Subsequently, the City of Houston canvassed the results on November 15, 2010.

## V.
## CAUSES OF ACTION

8. The Local Government Code, a state statute, addresses city charters. Section 9.004 (d) prohibits an amendment from containing more than one subject. As stated above, Proposition 1 violated this statute because it concerns more than one subject. Therefore, Proposition 1 is illegal and cannot be implemented as a charter amendment.

9. Further, state law requires that a proposition be described with such definiteness and certainty that the voters are not misled." *Blum v. Lanier*, 997 S.W.2d 259 (Tex. 1999). In this regard, the ballot should contain a description of the measure "in such language as to constitute a fair portrayal of [its] chief features . . . in words of plain meaning, so that it can be understood by persons entitled to vote." *Wright v. Board of Trustees of Tatum Indep. School Dist.*, 520 S.W.2d 787 (Tex. Civ. App.—Tyler 1975, writ dism'd). As such, "a ballot adequately describes a proposed amendment if it gives fair notice to the voter of average intelligence by directing him to the amendment so that he can discern its identity and distinguish it from other propositions on the ballot." *Hardy v. Hannah*, 849 S.W.2d 355 (Tex. App.—Austin 1992, writ denied). Proposition 1 clearly did not do this. Proposition 1's ballot language did not adequately describe what the electorate was actually being asked to vote on. Accordingly, the ballot language does not accurately describe the object and effect of Proposition 1, causing the voters to be intentionally misled.

Certified Document Number: 48143836 - Page 3 of 5

10.   For all of the foregoing reasons, Contestants seek a declaration from this Court stating that Proposition 1 is illegal and invalid as a matter of law, and now file this election contest to invalidate the outcome of the election on this particular Proposition.

## VI.
## CONCLUSION

11.   For the reasons detailed above, Contestants respectfully request that upon final hearing, this Court sustain this Election Contest and declare that Proposition 1 is illegal and invalid as a matter of law, as well as award all costs of suit, and such other and further relief to which Contestants may show themselves to be justly entitled.

Respectfully Submitted,

HOOVER SLOVACEK LLP

BY: _____
      Joseph O. Slovacek
      State Bar No. 18512300
      5847 San Felipe, Suite 2200
      Houston, TX 77057
      713-977-8686 (telephone)
      713-977-5395 (facsimile)

ATTORNEYS FOR PLAINTIFFS

Certified Document Number: 48143836 - Page 4 of 5

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has on this the 14th day of March, 2011March, 2011, been delivered in person or delivered in person by my agent or delivered by courier with receipted delivery or sent by certified mail, return receipt requested, or sent by telephonic document transfer before 5:00 p.m. of the recipient's local time in compliance with Rules 21 and 21A of the Texas Rules of Civil Procedure to:

*Via Facsimile*
David M. Feldman
City Attorney
Bertrand L. Pourteau, II
Sr. Assistant City Attorney
CITY OF HOUSTON LEGAL DEPARTMENT
P.O. Box 368
Houston, TX 77001-0368
900 Bagby, 4th Floor
Houston, Texas 77002
(832) 393-6454 – Telephone
(832) 393-6259 – Facsimile

Joseph Q. Slovacek

Certified Document Number: 48143836 - Page 5 of 5



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   January 28, 2024

Certified Document Number:        48143836 Total Pages:  5

*Marilyn Burgess*

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 51.301 and 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

# EXHIBIT C

CAUSE NO. 2010-81591

| | | |
|---|---|---|
| ALLEN MARK DACUS and ELIZABETH C. PEREZ, | § § § | IN THE DISTRICT COURT |
| Contestants, | § § | |
| v. | § § | OF HARRIS COUNTY, TEXAS |
| ANNISE D. PARKER, MAYOR and CITY OF HOUSTON, | § § § | |
| Contestees. | § | 234TH JUDICIAL DISTRICT |

## CONTESTANTS' SECOND AMENDED ELECTION CONTEST

TO THE HONORABLE JUDGE OF THIS COURT:

Allen Mark Dacus and Elizabeth C. Perez, (hereinafter referred to as "Contestants"), hereby file this Contestants' Second Amended Election Contest, and in support thereof shows as follows:

### I. DISCOVERY CONTROL PLAN

1. Contestants contend that no discovery is needed since the Texas Supreme Court has already ruled that the subject ballot language for Proposition 1 is misleading, as a matter of law, but to the extent necessary, this case should be conducted under a Level 2 discovery control plan.

### II. RELIEF SOUGHT - RULE 47(c)

2. Contestants seek declaratory relief only, per the Texas Election Code and the common law.

### III. THE PARTIES

3. Pursuant to Section 233.002 of the Texas Election Code, Contestants Allen Mark Dacus and Elizabeth C. Perez have standing to bring an election contest in civil district court concerning a proposition ("Proposition 1") that was on the November 2, 2010 ballot in Harris

1

County, Texas because they are qualified registered voters who reside in Harris County, Texas. Additionally, Contestants voted against Proposition 1 in the City of Houston General Election held on November 2, 2010.

4. In accordance with the Texas Civil Practice and Remedies Code § 17.024(b), Contestees Annise D. Parker, Mayor, and the City of Houston were served with Contestants' Election Contest and have made an appearance herein. Thus, this Second Amended Election Contest may be served by serving Donna Edmundson, the City Attorney for the City of Houston.

## IV. VENUE

5. In accordance with Texas Election Code § 221.002(a), the district court has exclusive jurisdiction over this election contest.

6. In accordance with Texas Election Code § 233.005, the district court in Harris County, Texas is the appropriate venue for this election contest. Furthermore, if such be necessary, venue in this action is proper and maintainable in Harris County, Texas under Texas Civil Practice and Remedies Code § 15.002(a) because the events or omissions giving rise to the claim occurred in Harris County, Texas. Specifically, the City of Houston's General Election concerning Proposition 1 was held in Harris County, Fort Bend County, and Montgomery County on November 2, 2010. However, pursuant to Section 231.004 of the Texas Election Code, no Judge in Harris, Fort Bend or Montgomery Counties may hear this suit, and a Judge from another County must be assigned.

7. On or about March 24, 2011, the Honorable Olen Underwood, Presiding Judge of the Second Administrative Judicial Region, assigned the Honorable Buddie Hahn, Judge of the 260th Judicial District Court of Orange County, Texas, as the presiding judge to the 234th Judicial District Court of Harris County, Texas for purposes of this case.

2

## V. FACTS

8.     On November 2, 2010, registered voters of the City of Houston were asked to vote on several propositions, including a proposition providing for the creation of a dedicated funding source to enhance, improve, and renew the City's drainage systems and streets. ("Proposition 1"). The ballot language for Proposition 1 read, as follows :

> PROPOSITION NO. 1 - CHARTER AMENDMENT PROPOSITION
> Relating to the Creation of a Dedicated Funding Source to Enhance, Improve and Renew Drainage Systems and Streets. Shall the City Charter of the City of Houston be amended to provide for the enhancement, improvement and ongoing renewal of Houston's drainage and streets by creating a Dedicated Pay-As-You- Go Fund for Drainage and Streets?

9.     The voters of the City of Houston passed Proposition 1 on November 2, 2010. Subsequently, the City of Houston canvassed the results on November 15, 2010.

## VI. CAUSE OF ACTION

10.     In 1888, the Texas Supreme Court held that a proposition must "substantially submit[] the question . . . with such definiteness and certainty that the voters are not misled." *Reynolds Land & Cattle Co. v. McCabe*, 72 Tex. 57, 12 S.W. 165, 165 (Tex. 1888); *accord Dacus v. Parker*, 58 Tex. Sup. J. 1076, 2015 Tex. LEXIS 548 (Tex. June 12, 2015) (stating "[i]n 1888, we held that the proposition must 'substantially submit[] the question . . . with such definiteness and certainty that the voters are not misled'"). In *Dacus*, the Texas Supreme Court clarified this age-old common law standard, as follows:

> . . . Simply put, the proposition must "substantially submit[] the question" with "definiteness and certainty." *See Reynolds Land & Cattle Co.*, 12 S.W. at 165. In other words, the ballot must identify the measure by its chief features, showing its character and purpose. *See Wright*, 520 S.W.2d at 792; *Turner*, 201 S.W.2d at 91. Even the Election Code suggests that propositions "describe" measures. See TEX. ELEC. CODE § 274.001(a), (b) (requiring the secretary of state at times to word propositions "describ[ing]" proposed state constitutional amendments).

3

. . .

In an election contest challenging the sufficiency of the ballot description, the issue is whether the ballot "substantially submits the question . . . with such definiteness and certainty that the voters are not misled." *Reynolds Land & Cattle Co.*, 12 S.W. at 165. An inadequate description may fail to do that in either of two ways. First, it may affirmatively misrepresent the measure's character and purpose or its chief features. Second, it may mislead the voters by omitting certain chief features that reflect its character and purpose. The common law standard thus requires that the ballot identify the measure for what it is, and a description that does either of the foregoing fails to comply with the standard. The common law safeguards the election, preventing voters from being misled and ensuring that the ballot substantially submits the measure.

2015 Tex. LEXIS 548, at *10-11.

11.     Contestants here claim that Proposition 1—the ballot language described above in paragraph 7—failed to meet the common law standards that it must "substantially submit[] the question" with "definiteness and certainty" and "must identify the measure by its chief features, showing its character and purpose." Notably, the measure published in the newspaper, as required by law, mentioned drainage charges as a key funding source, but the drainage charges were not mentioned in the ballot language at all. Specifically, Contestants here claim precisely what the Texas Supreme Court in *Dacus* has already held with respect to the ballot language for Proposition 1, as follows:

> . . . [T]he proposition in this case . . . did not mention the drainage charges to be imposed on most real property owners across the city. Because the proposition omitted a chief feature—part of the character and purpose—of the measure, it did not substantially submit the measure with such definiteness and certainty that voters would not be misled. Accordingly, the proposition was inadequate . . . .
>
> [W]e base our decision solely on the failure of the proposition to present the measure's chief features and its character and purpose. Because the ballot omitted a chief feature of the measure, it did not substantially submit the measure with such definiteness and certainty that voters would not be misled.
> . . .
> The City did not adequately describe the chief features—the character and purpose—of the charter amendment on the ballot. By omitting the drainage charges,

4

Certified Document Number: 67311052 - Page 4 of 6

it failed to substantially submit the measure with such definiteness and certainty that voters would not be misled.

2015 Tex. LEXIS 548, at *19-21 (footnote omitted).

12. Based upon the foregoing, and pursuant to Chapter 233 of the Texas Election Code and applicable law, Contestants seek an order from the Court declaring the Proposition 1 election void, as a matter of law.

## VII. CONCLUSION

13. For the reasons detailed above, Contestants respectfully request that upon final hearing, this Court sustain this Election Contest and declare that Proposition 1 is void, as a matter of law, as if the election had not been held[1] and such other and further relief to which Contestants may show themselves to be justly entitled.

Respectfully submitted,

HOOVER SLOVACEK LLP

By: _____
Joseph O. Slovacek
State Bar No. 18512300
Dylan B. Russell
State Bar 24041839
Galleria Tower II
5051 Westheimer, Suite 1200
Houston, Texas 77056
Telephone: 713-977-8686
Facsimile: 713-977-5395

**ATTORNEYS FOR CONTESTANTS**

---

[1] *See* Tex. Elec. Code § 233.012(a) (stating "[t]he effect of a void election . . . is the same as if the election had not been held").

5

Certified Document Number: 67311052 - Page 5 of 6

**ANDY TAYLOR & ASSOCIATES, P.C.**

William "Andy" Taylor
State Bar No. 19727600
ataylor@andytaylorlaw.com
2669 Highway 36 S., #288
Brenham, Texas 77833
Telephone: 713-222-1817
Facsimile: 713-222-1855

**CO-COUNSEL FOR CONTESTANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has on this the 5th day of October, 2015, been delivered in compliance with Rules 21 and 21A of the Texas Rules of Civil Procedure to:

*Via Facsimile and E-file*
Donna Edmundson
City Attorney
Judith L. Ramsey
Chief, General Litigation Section
James M. Corbett
Sr. Assistant City Attorney
CITY OF HOUSTON LEGAL DEPARTMENT
P.O. Box 368
Houston, TX 77001-0368
900 Bagby, 4th Floor
(832) 393-6491 – Telephone
(832) 393-6259 – Facsimile
donna.edmundson@houstontx.gov
judith.ramsey@houstontx.gov
jim.corbett@houstontx.gov

/s/ Dylan B. Russell
Dylan B. Russell

6



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   January 27, 2025

Certified Document Number:        67311052 Total Pages:  6

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 51.301 and 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 96716257
Filing Code Description: Motion
Filing Description: OPPOSED SECOND MOTION TO AMEND APPELLEE KUSLICH???S BRIEF
Status as of 1/29/2025 7:11 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Shannon Huggins | | freetx1876@gmail.com | 1/28/2025 9:25:24 PM | SENT |
| William Wassdorf | | will.wassdorf@oag.texas.gov | 1/28/2025 9:25:24 PM | SENT |
| Michelle Pique | | piquepink@gmail.com | 1/28/2025 9:25:24 PM | SENT |
| Elena Eydelman-Natividad | | elena.eydelman-natividad@oag.texas.gov | 1/28/2025 9:25:24 PM | SENT |
| Stephanie Criscione | | stephanie.criscione@oag.texas.gov | 1/28/2025 9:25:24 PM | SENT |
| Sharon Jorolan | | sjorolan@outlook.com | 1/28/2025 9:25:24 PM | SENT |
| Laura Hendrix | | laura.hendrix@oag.texas.gov | 1/28/2025 9:25:24 PM | SENT |
| Jarrett Woodward | | digging4au@protonmail.com | 1/28/2025 9:25:24 PM | SENT |
| Heather Couchman | | HeatherNTX@protonmail.com | 1/28/2025 9:25:24 PM | SENT |
| Carrisa Stiles | | carrisa.stiles@oag.texas.gov | 1/28/2025 9:25:24 PM | ERROR |
| Tommie Dickinson | | Tjdickinson316@gmail.com | 1/28/2025 9:25:24 PM | SENT |
| Travis Eubanks | | travis.eubanks@gmail.com | 1/28/2025 9:25:24 PM | SENT |
| Madelon Highsmith | | mhighsmith@mac.com | 1/28/2025 9:25:24 PM | SENT |
| Lars Kuslich | | blanket113@protonmail.com | 1/28/2025 9:25:24 PM | SENT |
| Amber Cloy | | Amberb2222@yahoo.com | 1/28/2025 9:25:24 PM | SENT |
| Traci Jones | | jones_traci24@hotmail.com | 1/28/2025 9:25:24 PM | SENT |
| Sharon Cotton | | sharon.cotton53@icloud.com | 1/28/2025 9:25:24 PM | SENT |
| Amanda Eubanks | | amanda.eubanks710@gmail.com | 1/28/2025 9:25:24 PM | SENT |